386 So.2d 127 (1980)
Catherine Lee DOVE, Plaintiff-Appellee,
v.
Ronald Wayne DOVE, Defendant-Appellant.
No. 7721.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1980.
*128 Whitaker & Doggett, John B. Whitaker, Natchitoches, for defendant-appellant.
Gahagan & Gahagan, Fred S. Gahagan, Natchitoches, for plaintiff-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
GUIDRY, Judge.
Incidental to and arising from a suit for separation from bed and board, the defendant, Ronald Wayne Dove, was found to be in contempt of court and was sentenced to serve six months in the parish jail. From this judgment defendant has appealed. The trial court issued an order staying execution of sentence pending defendant's appeal.
On November 2, 1979, plaintiff-appellee, Catherine Lee Dove, filed a petition for legal separation and obtained a temporary restraining order directed to defendant, enjoining him from molesting, harming or harassing plaintiff in any way. After being served with the petition and temporary restraining order on November 4, 1979, defendant went to the residence of plaintiff and administered a beating to plaintiff which resulted in her hospitalization. By first supplemental and amending petition filed November 16, 1979 plaintiff alleged the beating incident of November 4, 1979 as additional support of her petition for legal separation. The trial court ordered the temporary restraining order extended until such time as a rule to show cause could be heard on the issuance of a preliminary injunction, as well as issuing a rule to show cause why defendant should not be held in contempt for the violation of the temporary restraining order issued on November 2, 1979. These rules were heard on December 4, 1979. Judgment was rendered that date holding defendant in contempt of court. Defendant was fined $100.00 and given a 3-day suspended jail sentence. Additionally the trial court converted the temporary restraining order into a preliminary injunction. Defendant did not appeal from the judgment rendered and signed on December 4, 1979.
On January 10, 1980, plaintiff took a preliminary default judgment against defendant. On January 15, 1980 judgment was rendered and signed granting plaintiff a separation from bed and board and making permanent the preliminary injunction which prohibited defendant, Ronald Wayne Dove, "from harming, molesting, harassing, or disturbing plaintiff or the children in any manner". On the same date plaintiff filed a contempt rule against defendant for his failure to pay child support and for his continued harassment of plaintiff by constantly phoning her place of employment and driving by her residence late at night honking the horn. Said rule was set for hearing on January 29, 1980. On January 23, 1980, plaintiff filed an amendment to the rule alleging that despite the permanent injunction against defendant, he continued to harass her, and specifically, that on January 21, 1980, defendant went to plaintiff's place of employment and verbally harassed her in a loud voice, threw a bank statement at her, and pushed a clock and adding machine off plaintiff's desk onto the floor. The hearing on the rule was held on January 30, 1980.[1] At the hearing plaintiff and two witnesses on her behalf testified to the truth of the allegations of abuse and harassment which occurred following the initial contempt judgment of December 4, 1979. Defendant in his testimony, admitted the allegations to be true.
The foregoing facts illustrate a sad but common problem in many such domestic suits. The unfortunate frequency of violent or abusive acts by one spouse against the other petitioning spouse in a separation or divorce proceeding prompted the legislature to enact LSA-R.S. 9:306 by Acts 1979, No. 643, § 1, which went into effect September 7, 1979, and provides as follows:

*129 "Following the filing of a petition for separation or divorce, either spouse may petition for, and a court may grant, an injunction, without bond, to prohibit the other spouse from physically or sexually abusing the petitioning spouse."

This recently enacted statute provides specifically for the court's equitable relief of injunction, in addition to existing legal remedies, to protect a spouse's personal right to be free from physical or sexual harm, coercion, or intimidation while pursuing an action for separation or divorce.
As we understand appellant's brief, he points to no error in the injunction proceedings or in the procedure followed by the trial court in adjudicating him guilty of contempt on January 30, 1980. The main trust of his appeal appears to center around his argument that the sentence imposed for his violation of the court's injunction is excessive and thus violative of La.Const. of 1974 Art. 1, Section 20.
In State v. Sepulvado, 367 So.2d 762 (La. 1979) our Supreme Court concluded that under the Louisiana Constitution of 1974 excessiveness of a sentence imposed in a criminal matter is a question of law which is reviewable under the appellate jurisdiction of the Supreme Court. LSA-Constitution Article 1, Sec. 20; Article 5, Section 5(C).
The question as to whether or not a jail sentence imposed under LSA-R.S. 13:4611 upon a person adjudged guilty of contempt is reviewable for excessiveness is res nova. However, applying the rationale employed in Sepulvado, supra, we conclude that a sentence imposed under LSA-R.S. 13:4611 is reviewable for excessiveness, however, jurisdiction to review such sentence vests either in the Court of Appeal or the Supreme Court dependent upon whether the matter appealable is criminal or civil in nature. Under LSA-Constitution Article 5 the right of review in criminal matters is exclusively vested in the Supreme Court. Under the constitution the Court of Appeal are vested with appellate jurisdiction of all civil matters and matters appealed from family and juvenile courts, except criminal prosecutions of persons other than juveniles. LSA-Const. Article 5, Section 10.
The above being considered if the matter for review in the instant case is criminal in nature exclusive jurisdiction to review such matter lies with the Supreme Court. On the other hand if the matter under consideration is civil in nature this Court is vested with jurisdiction to consider same. Stated another way jurisdiction to review is dependent upon whether the trial court in the instant proceeding imposed a civil or criminal sanction at the contempt hearing. This precise issue was brought into focus in the recent case of State v. Austin, 374 So.2d 1252 (La.1979) albeit under a different factual context. In that case the court considered whether or not a contempt judgment rendered in a civil proceeding for non-payment of child support involved the imposition of a criminal sanction which might give rise to a double jeopardy bar to a subsequent prosecution of the father for criminal neglect of family under LSA-R.S. 14:74. We find the analysis and conclusions reached in that decision to be dispositive of the jurisdiction issue presented in this case. In State v. Austin, supra, the court stated:

"The merit of the defense position turns initially on whether the trial court imposed a civil or criminal sanction at the contempt hearing. Distinguishing between the two penalties is not an easy task. As pointed out by the Court in Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127, 131 (1971), `. . . the similarity between criminal and civil contempt is striking. ... (T)hey are almost identical, being governed by the same procedure and by penalties which are not too disparate.'

The United States Supreme Court has focused on the purpose of the contempt penalty imposed, rather than the character of the underlying proceeding, in distinguishing between the two kinds of contempt. In Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) defendants called before a grand jury investigating narcotics offenses refused *130 to testify, notwithstanding a grant of immunity. The trial court found them in contempt and sentenced them to two years' imprisonment, stipulating that they could win release by testifying. Defendants challenged the sentence on grounds the contempt proceeding had neither been initiated by indictment, nor tried to a jury. Despite the criminal nature of the proceedings, the United States Supreme Court denominated their refusal to testify a civil contempt, one which was therefore not governed by principles of criminal law. The Court announced `The test may be stated as: what does the court primarily seek to accomplish by imposing sentence?' It concluded that while defendants `... were ordered imprisoned for a definite period, their sentences were clearly intended to operate in a prospective mannerto coerce, rather than punish. As such, they relate to civil contempt.' The Court explained its result: `... the act of disobedience consisted solely "in refusing to do what had been ordered"... not "in doing what had been prohibited." And the judgments imposed conditional imprisonment for the obvious purpose of compelling the witnesses to obey. ... When the petitioners carry "the keys of their prison in their own pockets" . . . the action is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.... In short, if the petitioners had chosen to obey the order they would not have faced jail.'

Applying the analysis of the United States Supreme Court, contempts punished under R.S. 13:4611(A)(4) may be either criminal (punitive) or civil (coercive), depending upon the purpose of the convicting court. The judgment of contempt reveals that the sentence imposed was suspended upon the condition that relator pay past due child support and medical bills in the sum of $809 and $100 attorney's fees, all of which sums were paid. Therefore the intent of the court was clearly to compel obedience of its child support judgment, not to punish for defiance of the court's order. Thus, the contempt sentence was distinctly civil in nature and relator's double jeopardy arguments are unavailing."
Applying the analysis of our Supreme Court in State v. Austin, supra, and that of the U.S. Supreme Court in Shillitani v. United States, supra, we conclude that the six month jail sentence imposed upon defendant in the instant suit was punitive, i. e., a criminal sanction for the violation of the court's injunctive orders and thus review of this sentence is within the exclusive jurisdiction of the Louisiana Supreme Court. The best evidence as to the punitive nature of the trial court's intendment in imposing the six month sentence is contained in the trial court's reasons for judgment, which state in part as follows:

"... But your actions in calling your wife and harassing your wife and beating your wife and going to her place of employment and creating a disturbance, in my opinion constitutes an intentional contempt of this court. You're not being contemptuous of Peyton Cunningham, Jr. as an individual. You are being contemptuous of an Order of the Tenth Judicial District Court. You have been a police officer since sometime in 1972 and you of all people should know that if everybody behaves themselves and everybody did not break the law, we wouldn't need courts; we wouldn't need policemen; we wouldn't need jails. But, because people don't behave themselves, we have to have police, we have to have jails; we have to have courts. For you to intentionally disobey the orders of the court shows clearly and forcefully your contempt of the court orders which were served upon you. Revised Statute Title 13, Section 4611 sets forth penalties which are allowed for contempt of court. The last paragraph was amended sometime in 1978 or '79 where the legislature put some teeth in that law. And for disobeying a Temporary Restraining Order or a Preliminary or a Permanent Injunction, *131 the maximum sentence could be a fine of five hundred dollars and six months in the Parish Jail. I cannot tolerate your disobedience of the court. All you had to do was leave your wife alone. You have chosen to disobey the law and now you have to pay a price . . ."
It is obvious from the record and from the trial court's reasons that the sentence imposed was not intended to operate in a prospective manner nor was the sentence imposed for the purpose of compelling defendant's compliance with the previously issued injunction. Rather, clearly the sentence was imposed because defendant did what the court's order prohibited and he was being punished for his non-compliance with that order. Under such circumstances the sanction imposed is clearly a criminal sanction the review of which for excessiveness lies within the exclusive jurisdiction of the Louisiana Supreme Court.
For the above and foregoing reasons we conclude that this Court has no jurisdiction to consider this appeal and same will be dismissed at appellant's costs.
APPEAL DISMISSED.
NOTES
[1] Although the rule for contempt was fixed for hearing on January 29, 1980 the matter was tried on January 30, 1980. Presumably the parties to the rule agreed to a one day continuance as according to the court's minutes the matter was tried without objection on the 30th of January, 1980 with both parties and their counsel present.