Kenneth Wayne WEBBER, Appellant,

v.

Christine Ann E. WEBBER, Appellee.

No. A–873.

Court of Appeals of Alaska.

Sept. 6, 1985.

William F. Morse, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Terri Ann Pollock, Kay, Christie, Saville & Coffey, Anchorage, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Kenneth Wayne Webber and Christine Anne Webber were granted a decree of divorce in 1983. Since then, there have been continuous proceedings in the superior court before Judge Victor D. Carlson regarding visitation of the parties' minor children and contact between the parties. On June 27, 1984, Judge Carlson ordered Kenneth Webber to have no contact with the minor children of the marriage for a period of four months. Judge Carlson also prohibited him from having contact with his former wife or her family.

Webber was charged with criminal contempt of court for violating the "no contact" order. At Webber's arraignment, his counsel attempted to peremptorily challenge Judge Carlson. Judge Carlson de-

nied the challenge as untimely. Webber now appeals.

The sole issue for our determination is whether a defendant in a criminal contempt proceeding is entitled to peremptorily challenge a trial court judge who has actually presided over the civil matter out of which the contempt charge arose. Apparently, Webber's counsel attempted to exercise the peremptory challenge pursuant to Alaska Rule of Criminal Procedure 25(d). That rule states in part:

(1) *Entitlement.* In any criminal case in superior or district court, the prosecution and the defense shall each be entitled as a matter of right to one change of judge.

■ The disobeyance of the trial court's order, outside its presence, amounts, in this case, to an "indirect criminal contempt" which, if Webber is convicted, potentially exposes him to a term of imprisonment. *See* AS 09.50.020. Webber argues the criminal contempt charge is a sufficiently new action under AS 09.50.020 to entitle him to "all criminal procedural safeguards," including the right to peremptorily challenge Judge Carlson under Criminal Rule 25. *See also* AS 22.20.022. Appellee, on the other hand, argues the action was merely a continuing part of the divorce action, and that Webber waived his challenge to Judge Carlson in that underlying civil proceeding. *See* Alaska R.Civ.P. 42(c)(3) and (4).

In resolving this issue, we have found the case of *McClenny v. Superior Court of Los Angeles County,* 60 Cal.2d 677, 36 Cal.Rptr. 459, 388 P.2d 691 (1964), to be persuasive. That case arose out of a domestic relations action similar to Webber's. The court in that case found that the criminal contempt action was a continuation of the original civil proceeding because it involved "substantially the same issues" as the original action and because the matters presented in the criminal contempt proceeding were *"matters necessarily relevant and material to the issues involved in the [original] action...." Id.* 388 P.2d at 696 (emphasis in original). The *McClenny* court reasoned as follows:

In domestic relations actions the courts must exercise a continuing jurisdiction over the parties and over the subject matter of the action. The trial court must perform continuing supervisory and enforcing functions, and the contempt proceeding is one of the court's two principal means of performing these functions.[1]

. . . .

To hold that the contempt proceeding in the present case constitutes a separate and independent action would unduly impede the administration of justice. As respondent court recognized, "many defendants are constantly before the courts on contempt matters, and if each of these is to be considered a separate proceeding for the purpose of [the provision authorizing peremptory challenges], a not inconsiderable amount of judicial juggling will be required."

*Id.* at 699 (footnotes omitted).

■ We similarly conclude that the action charging Webber with criminal contempt was ancillary to and a continuation of the underlying domestic relations action. We therefore conclude that since Webber waived his right to challenge Judge Carlson in the domestic relations proceeding, he waived the right to peremptorily challenge Judge Carlson in the ancillary criminal contempt proceeding. We affirm Judge Carlson's ruling denying Webber's peremptory challenge motion as untimely.

AFFIRMED.

SINGLETON, J., concurs.

BRYNER, C.J., dissents.

SINGLETON, Judge, concurring.

I agree with Judge Coats' decision that a party who fails to make a timely perempto-

---

**1.** In a footnote, the court quoted 2 California Family Lawyer (Cont.Ed.Bar, 1963) p. 1386: "The most common methods used to enforce divorce judgments and orders are contempt proceedings and, as in ordinary judgments, execution." *Id.* at 699 n. 22.

ry challenge of a trial judge in a domestic-relations proceeding pursuant to Alaska Rule of Civil Procedure 42(c)(3) and (4), may not later preemptorily challenge that judge in a criminal contempt proceeding brought to enforce the domestic-relations judgment. *See* Alaska R.Crim.P. 25(d). I agree that we should follow *McClenny v. Superior Court of Los Angeles County,* 60 Cal.2d 677, 36 Cal.Rptr. 459, 388 P.2d 691 (1964).

I believe the proper decision in this case is foreshadowed in a number of Alaska Supreme Court decisions. In *Continental Insurance Companies v. Bayless & Roberts, Inc.,* 548 P.2d 398, 405, 406–07 (Alaska 1976), the Alaska Supreme Court refused to permit a change of judge to a party charged with criminal contempt in a civil case where the party did not allege that the trial judge was not impartial. Later, in *Esch v. Superior Court,* 577 P.2d 1039, 1042 (Alaska 1978), the supreme court refused to permit a peremptory challenge pursuant to Criminal Rule 25(d) by an attorney representing a defendant in a criminal case who first sought to exercise the challenge when he was subjected to a fine for failing to abide by a court-ordered briefing schedule. The fine was imposed under the authority of Civil Rule 95(b). In *Esch,* the supreme court analogized the imposition of penalties under Civil Rule 95(b) to a finding of criminal contempt, and reasoned that change of judge should only be allowed upon a showing of personal rancor on the judge's part which would prevent him from being impartial. The supreme court's decisions in *Esch* and *Continental Insurance Companies,* are consistent with its earlier decision in *Kvasnikoff v. State,* 535 P.2d 464 (Alaska 1975), in which the court refused to permit a peremptory challenge to a judge in a probation revocation proceeding where the defendant had not challenged the judge at the original criminal proceeding. The court reasoned:

> Peremptory challenge of a judge cannot be entertained as to subsequent hearings which are a part or a continuation of the original proceedings. *Jacobs v. Superior Court,* 53 Cal.2d 187, 1 Cal.Rptr. 9, 347 P.2d 9, 11 (1959), as *modified on denial of rehearing* (1960).

The authors of the Uniform Rules of Criminal Procedure (1974), in their comments on Rule 741(a), note that:

> "The first sentence is exception [but if trial has began before a judge, no demand may be filed as to him] makes it clear that a demand cannot be used to prevent the judge who presided over trial from sentencing or hearing post-trial motions.... It seems that the same judge should be able to conduct all proceedings in a case which occur after trial commences.

535 P.2d at 466 (footnotes omitted).

*Kvasnikoff* stands for the proposition that subsequent or ancillary proceedings to enforce, modify, or vacate an earlier decision, even though, in form, separate proceedings, do not give rise to a new right to peremptorily challenge a judge who presided without objection at the earlier proceeding. In support of this proposition, the court said:

> When a judge has entered an order placing defendant on probation, any subsequent hearing held to determine whether probation should be revoked is a supplemental proceeding. Thus, if a defendant fails to file a peremptory challenge prior to trial, and if the trial judge places defendant on probation, then the defendant is without the power to challenge the trial judge at a later sentencing hearing. We believe that justice is better served by preserving the jurisdiction of the original trial judge over the sentencing process. The goals of sentencing are best met when a judge who is familiar with a case is permitted to determine whether probation should be revoked and sentence should be imposed.

535 P.2d at 466.

Refusal to allow a party to an earlier proceeding a new peremptory challenge when he or she is involved in a subsequent proceeding to enforce or modify the earlier judgment, is also consistent with the interpretation the Arizona Supreme Court has

placed upon Arizona Rule of Civil Procedure 42(f), from which Alaska Rule of Civil Procedure 42(c) was derived. *See, e.g., Ross v. Superior Court,* 109 Ariz. 414, 510 P.2d 386 (1973) (party to domestic relations proceeding may not peremptorily challenge original trial judge in proceeding seeking modification of original judgment) *Hofstra v. Mahoney,* 108 Ariz. 498, 502 P.2d 1317 (1972).[1]

A far more difficult question for me is whether findings of criminal contempt in domestic-relations proceedings should be appealable to this court or directly to the supreme court. A party may not initially appeal to the supreme court as a matter of right. Alaska R.App.P. 202; AS 22.05.-010(b), (c). However, in any matter in which a party has a right to appeal to this court under AS 22.07.020(a) and .020(d), the supreme court has residual appellate jurisdiction. AS 22.05.010(a). Thus, the Alaska Supreme Court has final appellate jurisdiction in all cases. AS 22.05.010(a). Jurisdiction of this court, in relevant part, is limited to appeals that arise from criminal prosecutions. AS 22.07.020(a)(1). The question then becomes whether a proceeding to hold a person in "criminal contempt" is a criminal prosecution for purposes of appellate jurisdiction.

The overwhelming majority of jurisdictions do not have separate appellate courts for civil and criminal proceedings. Consequently, the precise issue present here would never arise since an appeal, whether denominated civil contempt or criminal contempt, would probably end up in the same court. In the limited time available to prepare this concurring opinion, I have found only four jurisdictions which have established separate courts of civil and criminal appeal: Alabama, Louisiana, Tennessee, and Texas. Alabama holds that the court of criminal appeals lacks jurisdiction over criminal contempts arising in civil proceedings. *See, e.g., Tetter v. State,* 358 So.2d 1046, 1048 (Ala.1978); *Jim Walter Resources, Inc. v. Local Union No. 12014,* 356 So.2d 640, 642–43 (Ala.1978). Louisiana reaches the opposite conclusion and holds that where a contempt arises in the course of a civil proceeding, if it is a civil contempt, it is appealable to the court of appeals, which has appellate jurisdiction primarily over civil matters, but if it is a criminal contempt, it is directly appealable to the state supreme court. *See Dove v. Dove,* 386 So.2d 127, 129 (La.App.1980). I have been unable to find a Tennessee or Texas decision directly addressing the problem. It appears, however, that in both Tennessee and Texas, the courts of civil appeals review judgments of criminal contempt arising out of civil proceedings. *See, e.g., Garrett v. Forest Lawn Memorial Gardens, Inc.,* 588 S.W.2d 309, 315 (Tenn. App.1979); *Ex Parte Payne,* 598 S.W.2d 312 (Tex.Civ.App.1980); *Ex Parte Stringer,* 546 S.W.2d 837 (Tex.Civ.App.1976).

I believe we should follow the reasoning of the Alabama Supreme Court and decline jurisdiction. "Criminal contempt," which is merely a means of enforcing a civil judgment arising from a civil proceeding, is prosecuted by a party not by a public prosecutor, and is based on issues inextricably intertwined with the underlying litigation. I believe this reasoning is sound and should be followed by our supreme court. It is simply a variation on the theme in *Kavasnikoff v. State,* 535 P.2d 464 (Alaska 1975),

---

**1.** The writer chaired a committee of the judges of the superior court in the third judicial district which originally proposed Civil Rule 42(c) and Criminal Rule 25(d) to the supreme court. The proposals were virtually verbatim Arizona Rule of Civil Procedure 42(f) and Arizona Rule of Criminal Procedure 10. The supreme court made minor modification in the rules prior to enacting them. As originally enacted the rules only applied in jurisdictions utilizing a master calendar, which was intended to limit their operation to the third judicial district, which at the time was the only jurisdiction utilizing a master calendar. *See* Supreme Court Order Nos. 185 and 186, effective July 1, 1974. Subsequently, the rules were amended to make them applicable statewide. *See* Supreme Court Order No. 262, effective December 31, 1976 and Supreme Court Order No. 292, effective February 21, 1978. *See, e.g., Gardner v. State,* 702 P.2d 250, Op. No. 485, n. 4 at 4 (Alaska App.1985) (Alaska Rules of Criminal Procedure 25(d) patterned after Arizona Rule of Criminal Procedure 10.4).

that supplemental or ancillary proceedings are really part and parcel of the original proceeding.

Louisiana, in contrast, applies a doctrinaire approach. In determining which court has appellate jurisdiction over an appeal arising out of a contempt proceeding, Louisiana courts look to the penalty imposed and not the circumstances giving rise to the imposition of the penalty. If the purpose of the sanction is to penalize the defendant for past action rather than coerce him into performing some future action, then the proceeding is considered to be criminal in nature and any appeal should go to the state supreme court, which has appellate jurisdiction over criminal cases. I recognize that the Alaska Supreme Court has consistently differentiated between civil and criminal contempt cases on the basis of the purpose for which a penalty was initially imposed. *See, e.g., Wood v. Superior Court,* 690 P.2d 1225 (Alaska 1984); *Diggs v. Diggs,* 663 P.2d 950 (Alaska 1983); *Pharr v. Fairbanks North Star Borough,* 638 P.2d 666, 669 (Alaska 1981); *Continental Insurance Companies v. Bayless & Roberts Inc.,* 548 P.2d 398, 405, (Alaska 1976); *Gwynn v. Gwynn,* 530 P.2d 1311 (Alaska 1975); *Johansen v. State,* 491 P.2d 759, 764 (Alaska 1971); *State v. Browder,* 486 P.2d 925 (Alaska 1971).

The issues in those cases were sufficiently different from the question of which court should hear the appeal, that they should not be considered controlling.[2] Each of these cases was faced with determining whether certain procedural safe-

**2.** The strongest dicta identifying criminal contempt proceedings with criminal prosecutions is in *L.A.M. v. State,* 547 P.2d 827 (Alaska 1976). L.A.M. was adjudicated a child in need of supervision for running away from home and being truant from school. The legislature sharply differentiated children in need of supervision from delinquents adjudicated for performing acts which if performed by adults would be crimes. As a condition of her release, L.A.M. was ordered to submit to the authority of the State Department of Health and Social Services and live in a foster home or a group home. She violated the order by running away from the foster home and the state successfully had her adjudicated a delinquent for criminal contempt. The supreme court affirmed, holding that willful violation of a court order was a violation of statute for which a child could be adjudicated delinquent. It said:

> Whether we characterize L.A.M. as a delinquent child, a child in need of supervision, a dependent child or merely a child whose custody is disputed in a domestic relations proceeding, the court has authority, upon extending all procedural safeguards, to make orders affecting her custody. It is argued, however, that this is a situation where the court has no power to enforce its order, and thus the court must release L.A.M. This view is contrary to the inherent power of the court to enforce its orders or decrees. While the court may have limitations on its power to act, there are only due process limitations on its authority to compel enforcement of its orders. Hence, we reject the argument that the superior court lacked the authority to enforce specific orders against L.A.M. in this case.
>
> The lower court determined that L.A.M. would not abide by any orders it entered

regarding her supervision under AS 47.10.-080(j). This behavior constitutes willful criminal contempt of the court's authority; were she an adult, her actions would be characterized as a "crime" under Alaska statutes. She was, therefore, properly declared a delinquent and subject to those sanctions available for the correction of a delinquent minor's behavior. Certainly, conciliation should precede coercion; and if coercion is necessary, mild sanctions should first be tried before more severe sanctions are imposed. However, where mild sanctions fail, the court's orders must be enforced and severe sanctions should be imposed if necessary.

547 P.2d at 835–36 (footnote omitted).

While findings of delinquency are appealable to this court under AS 22.07.020(a)(3), findings that a child is in need of aid because she runs away from home or is truant from school are appealable to the supreme court. *See* AS 22.05.-010(b); AS 47.10.010(2). *L.A.M.* was decided before this court and its jurisdiction was established and should not be deemed controlling. In *L.A.M.,* the court was faced with determining how to enforce orders against children who persist in behavior for which they could not initially be incarcerated. The court seemed to find there would be no way to enforce court orders without the threat of incarceration. The court seemed to conclude that the only way to incarcerate the child was to find her guilty of a crime and the only available crime was criminal contempt. Therefore, the court seemed to decide that criminal contempt could support a finding of delinquency. Assuming, without deciding, that *L.A.M.* is still good law, it should not determine the question of appellate jurisdiction outside the peculiar context of children's proceedings.

guards, namely the right to counsel, the right to a jury trial and, by extension, the right to proof beyond reasonable doubt, should be required before a party can be found in criminal contempt. The court, in those cases, recognized that the penalty imposed—analogous to the penalty imposed in a criminal prosecution—was the most important factor upon which a decision regarding these procedural safeguards should rest. Consequently, the court concluded that "criminal contempt" was a crime and therefore accorded appropriate procedural safeguards in criminal contempt proceedings.

However, the court recognized that although the criminal contempt proceeding was similar to the criminal prosecution in the punitive nature of punishment imposed, it was also similar to the civil proceeding in a number of respects. Specifically, criminal contempt actions and civil proceedings are both prosecuted by private parties and the sanction of imprisonment in a criminal contempt case, in addition to punishing the defendant for past conduct may serve the same purpose as a civil action to the extent that it coerces future compliance with the court's orders. *See Johansen v. State*, 491 P.2d at 764. It seems to me that the similarities between criminal contempt and civil actions, as well as the close relationship between the contempt and the original proceeding in the context of domestic relations, are more important than the penalty imposed in determining which court should hear the criminal contempt appeal.

Viewed in this light, a citation for criminal contempt is not a separate "criminal prosecution," but merely a continuation of an ongoing civil proceeding. The fact that a litigant is entitled to certain procedural safeguards customarily available to criminal defendants does not change the fact that the case is a civil case being litigated by private parties.[3] Taking into account the fact that domestic-relations litigation is party-financed, we should be careful not to expose a litigant to multiple appeals in different appellate courts. Rather, we should ensure a plain, speedy appellate remedy whereby all relevant issues can be resolved at the same time in the same court. We should recognize that the same acts or omissions might give rise to both civil and criminal contempt proceedings. *See, e.g., United States v. North*, 621 F.2d 1255 (3rd Cir.1980) *cert. denied subnom. Eyler v. United States*, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980) (recognizing hybrid contempt which is both civil and criminal, involving a jail sentence which, in part, is punitive for past misconduct and therefore must be served and, in part, is coercive for future acts of misconduct and therefore conditionally imposed). It would hardly serve judicial economy to have the same issues pending on appeal in both civil and criminal appellate courts at the same time. Finally, just as criminal contempts can arise in the course of domestic-relations proceedings, so also can "civil contempts" arise in the course of criminal proceedings. For example, civil contempt proceedings have resulted where a lawyer refused to represent a criminal defendant or perform some other task within his capacity, *see, e.g., United States .v. Wendy*, 575 F.2d 1025 (2nd Cir.1978), and where a witness refused to testify in a criminal case

---

**3.** At common law, contempt was viewed as a crime, punishable by criminal sanctions. *Johansen v. State*, 491 P.2d 759, 763 (Alaska 1971), *citing State v. Browder*, 486 P.2d 925 (Alaska 1971). This statement requires some qualification, however. At common law, the only contempts were breaches of the peace or attempted breaches of the peace which disrupted the administration of justice. It was only at a later time when the court of chancery began to use "contempt" to enforce its decrees that "contempt" became differentiated from criminal prosecutions. Use of the "contempt power" to enforce judgments was called "civil contempt."

Much later, a distinction was drawn in the latter type of case between punishing someone to coerce future compliance with a court order and punishing him for a past violation of a court order. *See generally*, Ronald L. Goldfarb, *The Contempt Power* 45–46 (paperback ed. 1971). Goldfarb persuasively criticizes this distinction between civil and criminal contempts. *See, The Contempt Power* at 49–61. This distinction was later adopted in *Johansen*. Questions of procedural safeguards aside, I would hold that actions taken to enforce civil judgments should result in appeals to the civil appellate court and not to the criminal appellate court.

despite an offer of immunity. *Surina v. Buckalew*, 629 P.2d 969, 971 (Alaska 1981). If criminal contempts which arise in civil cases must be appealed to this court, then it would appear that "civil contempts" which arise in criminal cases should be appealed directly to the supreme court.

The supreme court should accept a hearing in this case and should rule that review of contempt proceedings, whether properly denominated civil or criminal, should be in the appellate court which would have jurisdiction over the original proceeding from which the contempt arises. Such a bright-line rule would avoid confusion, avoid multiple appeals, limit expense, and best carry out the legislative judgment that initially provided for separate appellate review of civil and criminal cases. It would also coincide with the treatment the issues receives in three of four jurisdictions which have separate courts of civil and criminal appeals.

BRYNER, Chief Judge, dissenting.

I dissent.

Webber's right to exercise a peremptory challenge under Criminal Rule 25(d) first arose when he was cited for criminal contempt. He promptly sought to exercise this right. The majority of the court now holds that, by accepting Judge Carlson as the trial judge in the antecedent divorce dispute and waiving his right to a peremptory challenge under Civil Rule 42(c), Webber forfeited his right to a peremptory challenge under Criminal Rule 25 before it even arose.

Certainly, as the majority points out, convenience in enforcing the divorce decree would favor having Webber convicted and sentenced by the judge who handled the divorce dispute. If the primary issue here were enforcement of the underlying civil judgment, then the majority's position might make sense. However, had the trial judge been interested primarily in the continuing enforcement of its custody decree, he could readily have levied monetary sanctions or treated the matter as a civil contempt. Judge Carlson did not do so. Instead, he chose to accuse Webber of a criminal contempt. By so choosing, Judge Carlson clearly set into operation a new criminal action—one arising from but independent of the underlying custody dispute. Faced with an entirely new allegation—one amounting to a formal charge of criminal misconduct—Webber should now be permitted to exercise the full panoply of constitutional and procedural rights routinely accorded to the parties in other types of criminal cases.

The majority's holding ignores the separate and independent nature of the contempt charge against Webber.[1] It seems anomalous to recognize the contempt charge as a distinct and independent pro-

---

1. The majority's reliance on *McClenny v. Superior Court of Los Angeles County,* 60 Cal.2d 677, 36 Cal.Rptr. 459, 388 P.2d 691 (Cal.1964), is misplaced, since that case is readily distinguishable. Although not entirely clear from the statement of facts in *McClenny,* it appears that the contempt proceedings at issue were principally civil in nature, aimed at compelling compliance rather than punishing noncompliance. Moreover, unlike California's peremptory challenge statute, the Alaska rules dealing with peremptory challenges clearly distinguish between civil and criminal cases, separately providing for the right to exercise a peremptory challenge in each category of case. *See* Alaska R.Civ.P. 42(c), and Alaska R.Crim.P. 25(d). Thus, in the present case, Webber attempted to assert his right to peremptory challenge under Criminal Rule 25, not under Civil Rule 42.

Finally, cases decided by the Alaska Supreme Court after *McClenny* was decided in California make it apparent that, in failing to distinguish between criminal and civil contempt proceedings, the *McClenny* court adopted an approach that cannot be deemed acceptable in Alaska. Under Alaska law, it is crucial to determine, at the outset, whether a contempt proceeding is criminal or civil in character. While a civil contempt proceeding may properly be regarded as a continuation of the proceedings from which it arose, a person charged with criminal contempt is entitled to the full panoply of procedural and constitutional rights afforded in other areas of criminal prosecution; in other words, the issuance of a criminal contempt citation operates as the commencement of a separate criminal action. *See, e.g., Diggs v. Diggs,* 663 P.2d 950 (Alaska 1983); *Weaver v. Superior Court,* 572 P.2d 425 (Alaska 1977); *State v. Browder,* 486 P.2d 925 (Alaska 1971). *See also Johansen v. State,* 491 P.2d 759 (Alaska 1971).

ceeding for purposes of triggering Webber's constitutional rights to counsel and to jury trial but not for the purpose of triggering his right to a peremptory challenge under Rule 25.

