249 So.2d 127

## LOUISIANA STATE BOARD OF MEDICAL EXAMINERS

### v.

### Fred E. BATES.

### No. 51047.

June 7, 1971.

Rehearing Denied June 28, 1971.

Gravel, Roy & Burnes, Richard V. Burnes, Alexandria, for defendant-relator.

Gist, Methvin & Trimble, Howard B. Gist, Jr., Alexandria, for plaintiff-respondent.

SUMMERS, Justice.

The question to be decided is: Does the Constitution of the United States require a jury trial in a Louisiana State contempt proceeding in which a maximum fine of $1,000, or imprisonment for not more than 12 months, or both, may be imposed? We answer: A trial by jury in such cases is required under recent interpretations of the United States Constitution by the United States Supreme Court.

I.

In a suit in the Ninth Judicial District Court for the parish of Rapides by the Louisiana State Board of Medical Examiners it was adjudged that Fred E. Bates had engaged in the practice of chiropractic and, therefore, the practice of medicine without a certificate as required by the Medical Practice Act, La.R.S. 37:1261 et seq. Accordingly, as the Act permits, on March 7, 1958 an injunction issued prohibiting Bates from in any manner practicing medicine in the State of Louisiana without a license.

Later, on February 12, 1968, the Louisiana State Board of Medical Examiners moved that Bates be held in contempt for violating the Court's injunction. Bates moved for a trial by jury. After a contradictory hearing on the motion, the Court denied a jury trial. Bates was tried and found guilty of contempt for breaking the injunction; he was sentenced to pay a fine of $400 or, in default thereof, to serve 48 hours in the parish jail. He applied for writs to the Third Circuit which denied his application. Thereafter, we granted review limited to the issue of defendant's right to a jury trial. 257 La. 264, 242 So. 2d 243.

II.

■ Contempt of Court in this State is an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. There are two kinds, direct or constructive. La. Code of Crim.Proc. art. 20, et seq.; La. Code Civ.P. art. 221, et seq.

■■ Willful disobedience of any lawful judgment, order, mandate, writ or process of court is a constructive contempt of court: La.Code Crim.Proc. art. 23(2); La.Code Civ.P. art. 224(2). Trial for contempt is a summary proceeding before the judge alone. La.Const. art. 1, § 9; art. 7, §

41; La.Code Crim.Proc. art. 24; La.Code Civ.P. art. 225.

Punishment for contempt under the Code of Criminal Procedure is a fine of not more than $500, or imprisonment for not more than 6 months, or both. An exception to this general penalty provision not pertinent here is made for attorneys adjudged guilty of direct contempt, and to the punishment justices of the peace may impose. La.Code Crim.Proc. art. 25.

Under the Code of Civil Procedure (Article 227) the punishment which a court may impose for contempt is set out in Section 4611 of Title 13 of the Revised Statutes. Insofar as it is pertinent here, Section 4611 provides that punishment for disobeying or resisting a lawful permanent injunction is a fine of not more than $1,000, or imprisonment for not more than 12 months, or both. According to Article 884 of the Code of Criminal Procedure when a sentence imposed includes a fine, the sentence shall provide that in default of payment defendant shall be imprisoned for a specified period not to exceed one year. It is possible therefore that failure to pay the maximum fine could result in imprisonment for two years.

The codal provisions cited make it apparent that criminal and civil contempt are similar in many respects.

### III.

Defendant's defense is based upon the contention that the Court's refusal to grant him a jury trial in this contempt proceeding is contrary to the Constitution of the United States as recently interpreted in the decisions of the Supreme Court of the United States. He cites four decisions to support his position: Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Dyke et al. v. Taylor Implement Manufacturing Company, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968) and Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).

In Duncan v. Louisiana, *supra,* the United States Supreme Court held, in reversing Duncan's conviction in a bench trial for simple assault involving a maximum penalty of two years' imprisonment, that the Sixth Amendment, as applied to the States through the Fourteenth, requires that defendants accused of serious crimes must be afforded the right to trial by jury. The Court held that where the possible imprisonment was two years, the crime was "serious". The Court also reaffrimed the long-established view that so-called "petty offenses" may be tried without a jury. The line between "serious" and "petty" crimes was not drawn. See Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52,

75 L.Ed. 177 (1930); Schick v. United States, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904); Natal v. Louisiana, 139 U.S. 621, 11 S.Ct. 636, 35 L.Ed. 288 (1891); Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888); Frankfurter & Corcoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv.L.Rev. 917 (1926). But see Kay, Petty Offenders Have no Peers!, 26 U Chi.L.Rev. 245 (1959).

In Bloom v. Illinois, 391 U.S. 194, 88 S. Ct. 1477, 20 L.Ed.2d 522 (1968), involving an Illinois conviction for criminal contempt wherein Bloom was sentenced to 24 months' imprisonment, the Court, in view of the holdings in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); and United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), re-examined the broad rule that a jury trial was not constitutionally required in all criminal contempts. In considering the issue thus presented, the Court held that criminal contempt is a crime in every essential respect; serious criminal contempts are so nearly like other serious crimes that they are subject to the Constitution's jury trial provisions and only petty contempts may be tried without honoring demands for trial by jury.

The Bloom Court was further of the opinion that, to the extent that summary punishment for criminal contempts preserves the dignity, effectiveness and efficiency of the judicial process, those interests are outweighed by the need to provide the defendant charged with a serious criminal contempt with all the procedural protections deemed fundamental to our judicial system. In this decision the power to commit for civil contempt and to punish petty criminal contempts summarily was unaffected.

In holding that Bloom, sentenced to a two-year prison term, was constitutionally entitled to a jury trial, the Court declared that when the Legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty and has left the punishment open-ended, as it were, the best evidence as to the seriousness of the offense is the penalty actually imposed.

On the same day the Duncan and Bloom decisions were handed down, May 20, 1968, the Supreme Court in Dyke et al. v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), again considered the right to trial by jury in contempt proceedings. There the trial judge denied a jury trial, and Dyke and others were found guilty of criminal contempt and given the maximum sentence of 10 days in jail and a $50 fine.

In light of the maximum sentence which the Tennessee statutes allowed (a fine of $50 and imprisonment not exceeding 10

days), it was held that the criminal contempt for which Dyke and the others were convicted was a "petty offense", to which the federal constitutional right to a jury trial does not extend.

Then more recently, on June 22, 1970, the Supreme Court decided Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), holding that a potential sentence in excess of 6 months' imprisonment is sufficiently "severe" by itself to take the offense out of the category of "petty" insofar as the right to jury trial is concerned.

There the Court determined the line between "petty" and "serious" for the purpose of the Sixth Amendment right to trial by jury. The opinion noted that in response to the decision in *Duncan*, Louisiana had lessened the penalty for misdemeanors to 6 months, and has provided for a jury trial where the penalty still exceeds 6 months in criminal cases. La.Code Crim.Proc. art. 779; Comment, Jury Trials in Louisiana—Implications of Duncan, 39 La.L.Rev. 118, 127 (1968). Only in New York City, at that time, was a jury trial denied by statute to a defendant charged with an offense punishable by imprisonment in excess of 6 months.

In drawing the line between "petty" and "serious" offenses, Mr. Justice White wrote:

Of necessity, the task of drawing a line "requires attaching different conse-quences to events which, when they lie near the line, actually differ very little." Duncan v. Louisiana, *supra,* at 161, 88 S.Ct., at 1453. One who is threatened with the possibility of imprisonment for six months may find little difference between the potential consequences which face him, and the consequences which faced appellant here. Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits which result from speedy and inexpensive nonjury adjudications. We cannot, however, conclude that these administrative conveniences, in light of the practices which now exist in every one of the 50 States as well as in the federal courts, can similarly justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment. 90 S.Ct. 1886, 1890 (1970)

IV.

Thus the Duncan rule requiring trial by jury for "serious" crimes is made applicable to contempts by Bloom v. Illinois and Dyke v. Taylor Implement Manufacturing Co., and Baldwin v. New York drew the

line between "petty" and "serious" offenses at 6 months in a criminal trial. The only aspect of the case at bar which does not fall squarely within the intendment of these cases stems from the argument that it does not grow out of a criminal proceeding, and, being ancillary to a civil proceeding, it is a civil contempt and not a criminal contempt. All four cases cited by defendant, plaintiff contends, involved either criminal prosecutions or criminal contempt proceedings, and, therefore, there is no authority against a bench trial in this case.

■ As we pointed out in Part II of this opinion, the similarity between criminal and civil contempt is striking. Indeed we are constrained to say that they are almost identical, being governed by the same procedure and by penalties which are not too disparate. Nevertheless, conceding some differences exist, the Court cannot be bound by these distinctions in our State law or our jurisprudence,[1] be they great or small. For the constitutional right to a jury trial under the United States Constitution determined by the United States Supreme Court governs. This determination makes this contempt proceeding criminal contempt for all relevant purposes. Repeated reference to "criminal" contempt in the Bloom and Dyke cases convinces us

that the case at bar falls within the category of contempt proceedings contemplated there. As the Bloom Case declared:

Criminal contempt is a crime in the ordinary sense; it is a violation of law, of public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes: "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."

In support of the view we take, it is noted that in the Dyke et al. v. Taylor Implement Manufacturing Co. Case the conduct characterized as criminal contempt involved the violation of an injunction in a labor dispute, which is almost the identical situation involved in the case at bar.

Another basic distinction between criminal contempt and civil contempt sometimes recognized is that criminal contempt involves a fixed punishment for the transgression, while civil contempt is merely a means of compelling compliance with lawful orders of the court. See dissenting opinion of Mr. Justice Goldberg in United States v. Barnett, 376 U.S. 681, 753, 84 S. Ct. 984, 12 L.Ed.2d 23 (1964). By this

---

1. Gautreau v. Gautreau, 225 La. 254, 72 So.2d 497 (1954); Pizzolato v. Cataldo, 202 La. 675, 12 So.2d 677 (1943); Perrault v. Edwards, 170 La. 671, 129 So. 125 (1930); City of Gretna v. Ross-

ner, 154 La. 117, 97 So. 335 (1923); Roussel v. Railways Realty Co., 133 La. 153, 62 So. 608 (1913); Wall v. Wall, 225 So.2d 47 (La.App.1969).

definition the case at bar involves a criminal contempt since a fixed punishment of imprisonment is prescribed for breaking the injunction. La.R.S. 13:4611(3).

For the reasons assigned we hold that Bates was entitled to be tried by a jury of five (La.Code of Crim.Proc. art. 782) in this contempt proceeding; the judgment condemning him for contempt and the fine and alternative punishment imposed are therefore, annulled, vacated and set aside, and these proceedings are remanded to the trial court to be proceeded with in accordance with law and in keeping with the reasons assigned herein.

HAMLIN, J., dissents with written reasons.

TATE, J., recused, having participated in the Court of Appeals consideration.

HAMLIN, Justice (dissenting).

I respectfully dissent.

I fully agree with the following statement appearing at the end of the brief of the Louisiana State Board of Medical Examiners:

"In conclusion we reiterate that if simple contempt proceedings in which the court is attempting to enforce its own orders give rise to jury trials under the federal constitution, then the judicial system of this country is in real trouble. If the courts cannot have the power and authority to enforce their own orders, then we submit the radicals of this country will soon run all judges from the bench. The liberals will of course argue that to deny them the privilege of a trial by jury will strip them of their freedoms, but this is simply not so. The right of appeal and supervision by the appellate courts of this land offers full protection to the accused against the whims of a dictatorial or unfair trial judge."