374 So.2d 1252 (1979)
STATE of Louisiana
v.
Gerald AUSTIN.
No. 64248.
Supreme Court of Louisiana.
September 4, 1979.
*1253 Michael J. Johnson, Cottonport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Eddie Knoll, Dist. Atty., Darrel D. Ryland, Asst. Dist. Atty., for plaintiff-respondent.
CALOGERO, Justice.
Two issues were raised in relator Austin's application for writsthe correctness of a trial court ruling that the prosecution against Austin for criminal neglect of family was not barred by the state and federal constitutional prohibitions against double jeopardy and the propriety of the court's denial of relator Austin's motion for acquittal. A statement of the history out of which the criminal neglect of family prosecution arose will facilitate an understanding of the legal issues which we must resolve.
A judgment rendered by the Twelfth Judicial District Court in 1977 ordered relator Austin to pay to his former wife child support for their younger daughter. All support payments for this child and for an older daughter (which latter payments were made pursuant to a judgment of another district court) ceased in September, 1978. The former Mrs. Austin, now remarried, took no action during the final months of 1978, but her present husband became unemployed in December, 1978, and commenced receiving unemployment compensation. Seeking enforcement of relator's obligation to support his children, Austin's former wife filed a rule to show cause seeking judgment for past due child support and contempt. The rule was tried before Judge James N. Lee of the Twelfth Judicial District Court, who rendered judgment convicting relator of contempt for failure to comply with that court's 1977 judgment condemning him to pay child support for his younger daughter.[1] The court imposed a thirty day sentence, which it suspended upon the condition that relator pay past due child support and medical bills, plus attorney's fees, to his former wife.
Two days after rendition of the contempt judgment relator was tried pursuant to an earlier filed bill of information charging him with criminal neglect of family, a violation of R.S. 14:74. The bill of information charged that relator "... did wilfully, unlawfully, and intentionally fail to support his two (2) minor children ... [who were] in destitute and necessitous circumstances...." Prior to the commencement of the bench trial, defense sought to have the prosecution dismissed, urging that the contempt conviction stemming from Austin's failure to provide child support payments constituted former jeopardy. Austin urged that the contempt conviction resulted from the same conduct alleged to have been the basis for the criminal charge under R.S. 14:74, failure to support his children during a specified period of time. The court declined to dismiss the criminal charge, ruling that the contempt sentence was imposed in a civil proceeding. The trial of the criminal charge commenced. At the close of the state's evidence, Austin sought a directed verdict of acquittal, urging the state failed to show that the minors were in destitute or necessitous circumstances. The court denied the motion and pronounced Austin guilty as charged at conclusion of the trial. The trial judge imposed a six month sentence, but suspended the sentence conditioned upon relator's payment of the $150 monthly child support for the two children.
In support of its claim that the court erred when it declined to sustain the plea of double jeopardy, Austin urges that the contempt proceeding conducted as a consequence of his failure to comply with the civil judgment awarding child support for his younger daughter was quasi-criminal in nature. Relator's brief urges that because the civil contempt proceeding and the criminal prosecution arose out of the identical conductfailure to support minor children *1254 during a specified period of timethe criminal prosecution was barred by relator's right to be spared multiple punishment for the identical offense.
In characterizing the concept of jeopardy in terms of the risk traditionally associated with a criminal prosecution, the United States Supreme Court, in Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), explicitly recognized that the risk to which the Double Jeopardy Clause of the Constitution refers is not present in proceedings that are not essentially criminal in nature. In State v. Galjour, 215 La. 553, 41 So.2d 215 (1949) this Court distinguished proceedings similar to those with which we are concerned, recognizing that "... the order of court awarding ... alimony [is] merely an incidental or ancillary proceeding flowing from the divorce action and [is] based on [the parent's] obligation [under Civil Code Article 227] to support his children ...." Galjour differentiated such a proceeding from proceedings under R.S. 14:74 which are "... criminal in their nature, based on the failure or past omissions of the father to fulfill the obligation to support his children [which the criminal statute itself creates]."
Unlike the situation alluded to in Galjour, in this case more is involved than enforcement of a support award by a pure money judgment. In the contempt proceeding which we review, the trial judge evidently found Austin's failure to pay wilful disobedience of a lawful judgment (C.Civ.P. art. 224[2]), thereupon convicting him of contempt and sentencing him in accordance with the provisions of R.S. 13:4611(A)(4) to thirty days' imprisonment, which sentence was suspended conditioned upon Austin's payment of past due child support and medical bills for the younger daughter, plus attorney's fees. In the defense view the penalty imposed transformed the essential character of the contempt proceeding. If the sanction imposed on the defendant is indeed criminal, rather than civil, concepts of double jeopardy would be relevant because, as pointed out by the United States Supreme Court in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), "[c]riminal contempt is a crime in the ordinary sense; ... a public wrong ...." In Bloom, the Court recognizes that "[c]riminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions." Bloom decrees that the role of criminal contempt, no less than that of many other criminal laws is the ". . . protection of the institutions of our government and enforcement of their mandates."
The merit of the defense position turns initially on whether the trial court imposed a civil or criminal sanction at the contempt hearing. Distinguishing between the two penalties is not an easy task. As pointed out by the Court in Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127, 131 (La.1971), "... the similarity between criminal and civil contempt is striking.... [T]hey are almost identical, being governed by the same procedure and by penalties which are not too disparate."
The United States Supreme Court has focused on the purpose of the contempt penalty imposed, rather than the character of the underlying proceeding, in distinguishing between the two kinds of contempt. In Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) defendants called before a grand jury investigating narcotics offenses refused to testify, notwithstanding a grant of immunity. The trial court found them in contempt and sentenced them to two years' imprisonment, stipulating that they could win release by testifying. Defendants challenged the sentence on grounds the contempt proceeding had neither been initiated by indictment, nor tried to a jury. Despite the criminal nature of the proceedings, the United States Supreme Court denominated their refusal to testify a civil contempt, one which was therefore not governed by principles of criminal law. The Court announced, "The test may be stated as: what *1255 does the court primarily seek to accomplish by imposing sentence?" It concluded that while defendants "... were ordered imprisoned for a definite period, their sentences were clearly intended to operate in a prospective mannerto coerce, rather than punish. As such, they relate to civil contempt." The Court explained its result: "... the act of disobedience consisted solely `in refusing to do what had been ordered' ... not `in doing what had been prohibited.' And the judgments imposed conditional imprisonment for the obvious purpose of compelling the witnesses to obey.... When the petitioners carry `the keys of their prison in their own pockets' ... the action is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.... In short, if the petitioners had chosen to obey the order they would not have faced jail."
Applying the analysis of the United States Supreme Court, contempts punished under R.S. 13:4611(A)(4) may be either criminal (punitive) or civil (coercive), depending upon the purpose of the convicting court. The judgment of contempt reveals that the sentence imposed was suspended upon the condition that relator pay past due child support and medical bills in the sum of $809 and $100 attorney's fees, all of which sums were paid. Therefore the intent of the court was clearly to compel obedience of its child support judgment, not to punish for defiance of the court's order. Thus, the contempt sentence was distinctly civil in nature and relator's double jeopardy arguments are unavailing.
Even were we to find necessary a comparison of the "elements" constituting the contempt and the crime of neglect of family in accordance with our traditional "same evidence" test to assure that "... conduct punished as one crime... [is not] relabeled a different crime and ... punished again." City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975), we would find that the additional element of finding the children for whom relator did not provide support in destitute or necessitous circumstances (an "element" totally without relevance insofar as the contempt proceeding stemming from defiance of the court's order to provide child support) takes the matter out of the realm of double jeopardy.
For the reasons outlined in the foregoing discussion, we find without merit the relator's double jeopardy complaint.
Likewise without merit is relator's claim that the court erred in denying his motion for acquittal made at the close of the state's case. The defense counsel urged the court to direct a verdict, arguing that the state failed to show relator's minor daughters were in destitute or necessitous circumstances. Evidence that the husband of the children's mother was unemployed and had to rely upon unemployment compensation to support himself, his wife, their two children and relator's two minor daughters and testimony of the former Mrs. Austin that the family was burdened with numerous medical expenses is at least some evidence that the children were in necessitous circumstances. Where there is some evidence proving the essential elements of a crime, no question of law is presented. This Court's jurisdiction on appeal extends only to questions of law. State v. Victor, 368 So.2d 711 (La.1979). Only the trier of fact may decide the issue of the sufficiency of the evidence.

Decree
For the reasons stated hereinabove, the relator's conviction and sentence are affirmed.
AFFIRMED.
SUMMERS, C. J., concurs in result.
DIXON, J., dissents, because of insufficient proof of necessitous circumstances.
DENNIS, Justice, dissenting.
The evidence does not support a reasonable trier of court's finding of necessitous circumstances beyond a reasonable doubt. See Jackson v. Virginia, ___ U.S. ___, 99 S.Ct. 2781, 61 L.Ed.2d 560, 1979.
NOTES
[1] As already noted the judgment decreeing that relator is to pay child support for his older daughter was rendered by another court. Judge Lee was not considering contempt with reference to the non-support of that child because it was not his court's judgment that decreed payment of that support.