DGUIDRY, J.
Relator, Karen Desselle, was charged on February 3, 2000, by bill of information, with simple kidnapping, a violation of La. R.S. 14:45. She pled not guilty and filed a motion to quash the bill of information on the basis of double jeopardy. Relator previously had been adjudicated in contempt of court by the Family Court, Parish of East Baton Rouge, on three occasions, two of which were for the same conduct forming the basis of the instant criminal prosecution.
The district court denied relator’s motion to quash on September 20, 2000, finding that the contempt proceedings in Family Court were civil, not criminal; therefore, there was no double jeopardy posed by the prosecution of relator for simple kidnapping. Relator applied for supervisory writs to this court, urging error as follows:
The district court erred in denying relator’s motion to quash the bill of information based upon double jeopardy.
The writ was granted on December 19, 2000. This Court reversed the district court’s denial of the motion to quash, determining that the sentences imposed in Family Court for contempt of court were punitive; therefore, the criminal prosecution for the same conduct was subject to a plea of double jeopardy. State v. Desselle, 2000-2408 (La.App. 1st Cir.12/19/00) (unpublished writ action).
The State sought review of this Court’s decision in the Louisiana Supreme Court. On March 16, 2001, the Louisiana Supreme Court granted the State’s application for review and vacated this Court’s decision. The Louisiana Supreme Court remanded the matter to this Court for briefing and argument (if directed by this Court) and for a full opinion. State v. DeSelle, 2001-0164 (La.3/16/01), 786 So.2d 742.
*462 STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
A transcript of the Family Court proceedings which appears in the record before us reflects that relator, Karen Des-selle, and her husband, George Desselle, |3were divorced in March of 1994, and share custody of their two minor children. Relator relocated to Arkansas, and George Desselle was named domiciliary custodian. Apparently, there were custody disputes, and ultimately, a stipulated judgment was entered by the Family Court regarding the visitation schedule for the summer of 1998. Relator, however, absconded with the children in July of 1998, following a scheduled visitation, and again on February 22, 1999 through April 2, 1999, following a subsequent scheduled visitation.
Relator relinquished the children to the East Baton Rouge Parish Sheriffs Office on April 2, 1999, at which time she was arrested pursuant to an arrest warrant and charged with simple kidnapping.
On July 31, 1998, following the first incident in which Karen Desselle had failed to return the children to George Desselle, Mr. Desselle’s counsel filed a rule with the Family Court seeking to hold Ms. Desselle in contempt of the Family Court’s visitation schedule. On August 13, 1998, the Family Court issued a written judgment holding relator in contempt of court, but deferring the imposition of any criminal sanctions to afford relator an opportunity to purge herself of the contempt by complying with the family court’s order regarding visitation. The court further ordered relator to pay $300.00 in attorney’s fees and costs in connection with the contempt proceeding.
On April 28, 1999, the family court conducted a hearing, on the court’s own motion, for contempt against relator on the grounds that relator had again absconded with the children, in February of 1999, in violation of the court’s visitation order. Additionally, the court took up the issue of the first contempt adjudication and the matter of a $10,000.00 bond, which the court had required following the first contempt hearing to ensure that relator would return the children pursuant to its order.
14At the conclusion of the April 28, 1999, hearing, the family court found that relator had failed to purge herself of the previous contempt adjudication. The court also found relator in contempt for the most recent instance of failing to return the children and sentenced her to 90 days in jail for the first contempt adjudication and 90 days in jail for the second contempt adjudication. The court delayed execution of the sentence to give the relator a chance to get with her attorney and “decide what you want the court to hear with regards to these children.” The court also stated that whether relator had to serve the time would “hinge” on how the $10,000.00 (bond) issue is addressed,[1] and allowed relator time to meet with her attorney on that issue as well. The family court judge stated:
“I’m going to give [relator] until August the 1st to determine what you want to do proeedurally to address the $10,000.00 issue, and to address where we’re going from here and then I will determine when you have to start serving your sentence.” (emphasis added).
Relator’s attorney then asked the court if there was a possibility the sentence would be suspended before the matter was end *463 ed, to which the court replied: “That’s what — I’ve left that open.”
Thereafter, in a third rule for contempt, filed by George Desselle’s attorney seeking to recover attorney’s fees for the prior contempt adjudication, relator stipulated to having taken the children between February and April of 1999, and the Family Court judge issued an order directing relator to pay $500.00 in attorney’s fees to opposing counsel, together with all court costs associated with the contempt proceeding. Since June 22, 1999, there has been no further action in the Family Court concerning the contempt adjudications and sentences, and relator has not yet served any time in jail.
On February 3, 2000, this criminal proceeding was initiated by a bill of information charging relator with simple kidnapping. The simple kidnapping |Rcharge is based on the same conduct underlying the second adjudication for contempt of court in the Family Court, namely, absconding with the children from February 25, 1999, through April 2, 1999. Realtor filed a motion to quash the bill on the basis that she had already been adjudicated in contempt by the family court on the very same charges and had been sentenced to serve 90 days in jail. Thus, according to relator, this subsequent criminal prosecution for the same actions constitutes unconstitutional double jeopardy. The motion was denied by the trial court based on its conclusion that the contempt proceeding in family court was “civil” in nature, rather than criminal; therefore, the double jeopardy prohibition is inapplicable. The issue before us is whether the trial court erred in finding the family court’s actions were for civil rather than criminal contempt and denying relator’s motion to quash.
DOUBLE JEOPARDY
We must first determine whether the (second) contempt proceeding against relator in the family court was civil or criminal. If the proceeding was civil in nature, trial of defendant on the kidnapping charge would not constitute double jeopardy. State v. Hope, 449 So.2d 633 (La.App. 1st. Cir.1984), citing State v. Austin, 374 So.2d 1252 (La.1979). If the proceeding was criminal in nature, the prohibition against double jeopardy may apply.
At the hearing on relator’s motion to quash and in appellate brief herein, the State argues that the contempt of court proceeding of April 28, 1999, was civil in nature rather than criminal. The State contends that the intent of the Family Court was to hold a civil contempt hearing on April 28, 1999, as reflected in the family court judge’s statement, “... this is totally on a civil contempt brought by the Court for the taking of the children and not returning them when they were supposed to .... ” The State contends that delaying the execution of the sentence further reflects the Family Court judge’s intent to use the contempt proceeding to |Rcoerce certain conduct rather than to criminally punish relator. The State argues that the fact that relator has never served any of the 90-day sentence indicates that the sentence was never actually imposed but was conditional upon relator’s future compliance and cooperation with the Family Court. The State urges that relator apparently successfully purged herself of the contempt adjudications since neither 90-day sentence was ever required to be served. Finally, the State points out that the record of the contempt proceeding reflects the frustration of the Family Court judge with relator’s repeated disregard for the visitation schedule. According to the State, this reflects that the judge was seeking a way to allow relator to visit with her children and, at the same time, ensure *464 that the children would be returned to their father in accordance with the visitation schedule. The State contends that it was not the intention of the Family Court judge to penalize relator but rather to delay imposition of the jail sentence and to use it to compel relator’s obedience prospectively.
In Austin, 374 So.2d 1252, our Supreme Court adopted the test set forth by the United States Supreme Court in Shillitani v. U.S., 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), in determining whether a contempt proceeding is civil or criminal. Under Shillitani, the test is: “What does the court primarily seek to accomplish by imposing sentence?” Shillitani, 384 U.S. at 370, 86 S.Ct. at 1535. In civil contempt, the punishment is remedial or coercive; in a criminal contempt case, it is punitive and intended to vindicate the authority of the court. A jail sentence is punitive/criminal if it is limited to imprisonment for a definite period; it is remedial — if the defendant stands committed unless and until he performs the affirmative act required by the court’s order. Estate of Graham v. Levy, 93-0636, p. 5, (La.App. 1st Cir.4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167. In other words, an unconditional penalty, one that the contemnor cannot affect or end, is criminal in nature. A conditional penalty, one |7which compels the contemnor to comply with the court’s order to end the penalty, is a civil one.
In Austin, 374 So.2d 1252, the defendant was found guilty of contempt of court for violating a child support order. The defendant was subsequently charged with criminal neglect of family, in violation of La. R.S. 14:74. The defendant sought to have the prosecution dismissed on the basis of double jeopardy. The court rejected defendant’s argument, concluding that the contempt proceeding had been civil, because the purpose of the sentence was to compel compliance with the support order rather than to punish the defendant for his noncompliance. The court’s conclusion was based on the fact that the 30-day jail sentence was suspended by the trial court on the condition that the defendant pay past due child support and medical expenses.
This court reached the opposite conclusion in State v. Hope, 449 So.2d at 635. In Hope, defendant was sentenced to, and served, a 10-day jail sentence after being found guilty of contempt of court for violating a visitation order by not returning his child for approximately five months after her scheduled return. The defendant was subsequently charged with simple kidnapping based on the same conduct, and filed a motion to quash urging double jeopardy. The trial court granted defendant’s motion, finding the contempt proceeding was criminal in nature and double jeopardy applied. This court affirmed, based on the fact that defendant actually served his jail term, which was meted out to punish him for his non-compliance with the previous orders of the court.
ANALYSIS
In the instant proceeding, the district court denied relator’s motion to quash the bill of information, finding the contempt proceedings were civil in nature and stating:
[The Family Court judge] delayed the imposition or execution of [the sentence], and specifically makes mention that it may well be ^suspended, that there were some things that were still pending up there that she was waiting to see how they were handled, and that would be the determining factor as to whether or not she would actually have to serve the 90 days or when she would have to serve it.
*465 In reviewing the correctness of the trial court’s finding, we are mindful that distinguishing between the two penalties (civil and criminal) is not an easy task ... the similarity between criminal and civil contempt is striking ... [T]hey are almost identical, being governed by the same procedure and by penalties which are not too disparate. State v. Austin, 374 So.2d at 1254, citing Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127, 131 (1971).
After a complete review of the record before us, particularly the transcript of the family court hearing, as well as considering the arguments presented by both sides, we find that the contempt proceedings in the instant matter were criminal in nature, notwithstanding the Family Court judge expressly referring to it as a civil contempt proceeding. The focus of inquiry is on the purpose of the contempt penalty imposed, rather than the character of the underlying proceeding; therefore, the family court judge’s characterization of the proceeding as civil rather than criminal is not dispositive of the issue.
At the time of the first contempt adjudication for Ms. Desselle’s absconding with the children in July, 1998, the family court held Ms. Desselle in contempt, but expressly deferred the imposition of any type of sanction in order to give Ms. Desselle an opportunity to comply with the court’s order regarding visitation and thereby purge herself of the contempt. The obvious intent of the family court was to ensure compliance with its visitation order, which action would constitute a “purging” of the contempt finding with no penalty being imposed. Clearly, this contempt proceeding was civil in nature.
However, subsequent to the first adjudication, Ms. Desselle did not avail herself of the opportunity to avoid the penalty and purge herself of contempt by complying with the court’s visitation orders. Indeed, she committed another 19violation of those orders for which a second contempt adjudication was had. At that hearing, the family court expressly found Ms. Desselle had failed to purge herself of the earlier contempt and imposed the penalty therefor: a 90-day sentence. There was no longer any opportunity for Ms. Desselle to purge herself of that finding, and there was no compliance being sought by the family court in imposing that sentence. In addition to that sentence, the court also found Ms. Desselle in contempt of court for the subsequent absconding with the children in February, 1999. In direct contrast to the first contempt penalty, which was clearly civil in nature, the family court judge did not defer imposition of sentence, nor did she allow Ms. Desselle an opportunity to purge herself of the second contempt. Instead, she imposed another 90-day sentence for Ms. Desselle’s failure to return the children until April, 1999. There was no compliance sought by the family court by meting out that 90-day sentence; the violation had already occurred and there was nothing left for Ms. Desselle to do in order to be in compliance with the court’s orders and/or to purge herself of the contempt. Not only was this sentence actually meted, it was set for a fixed term, and as noted, in contrast with the first contempt finding, Ms. Desselle was not given an opportunity to comply or purge herself of the contempt.
The record reflects that the Family Court judge was extremely unhappy with relator for violating the visitation order, particularly after her having done so on at least one previous occasion. The Family Court indicated a desire to punish relator for disobeying the court’s orders and for setting a bad example for her children. Although the Family Court judge noted that she had given relator an opportunity *466 to purge herself of the first contempt, the court nonetheless imposed a 90-day jail term for relator’s failure to do so and an additional 90 days for the second contempt, without mention of any prospective opportunity for her to purge herself again.
|inThe true difficulty in resolving the issue before us is the discussion at the hearing concerning matters which still needed to be resolved, including how relator was going to satisfy the $10,000.00 bond and whether or when other pleadings regarding child custody would be filed. Further, as noted earlier, relator’s counsel asked the court if the sentence might possibly be suspended before the matter was ended, and the court responded that it was leaving that “open.” While these facts would suggest that the sentence imposed might later be suspended, in which case, the matter might be deemed a civil contempt, the indefiniteness and open-ended nature as to execution of the sentence imposed subjects the relator to the risk of double jeopardy.
Normally, in a civil contempt, the sentence is suspended or imposition of sentence may be deferred to allow the con-temnor the opportunity to “right the wrong” and be purged of contempt. However, when this is the case, specific compliance by the contemnor is sought, and specific conditions are attached to the delay of sentencing. Thus, compliance with the specified conditions relieves the contemnor of the contempt finding and removes the risk of his/her being subjected to being put twice in jeopardy for the same offense. In the instant case, the family court failed to impose specific conditions or a mechanism by which Ms. Desselle could purge herself of the contempt. In fact, it appears that whether and/or when the sentence is executed is solely at the discretion and within the control of the family court. This is precisely the kind of situation which subjects a person to the risk of double jeopardy. There is no way of knowing for certain whether this person might be subjected to being punished twice for the same conduct. While it is true that the sentence has not yet been served, it has nonetheless been imposed. It appears that the only thing remaining is the actual execution of the sentence, which conceivably could occur at any time.
In Further, the indefiniteness of the family court’s actions in this matter actually compels the relator to protect herself against double jeopardy by filing a motion to quash the indictment which is based on the same conduct as the contempt. If we were to allow a criminal prosecution after which, if found guilty, Ms. Desselle could be sentenced, there is no safeguard nor guaranty that Ms. Desselle would not also be subject to being sentenced to the 90-day term already imposed by the family court. Clearly, this would be in violation of the prohibition against double jeopardy. For this reason, although there is some indication that the family court intended a civil contempt, because the sentence imposed neither requires nor allows any remedial action by Ms. Desselle, and the execution of said sentence is not clearly affected in any way by the subsequent actions or inaction by Ms. Desselle, we find that the contempt finding was criminal in nature. Therefore, a criminal prosecution for simple kidnapping based on the same conduct for which Ms. Desselle was held in contempt would impermissibly subject her to the risk of double jeopardy.
Accordingly, we find the sentence imposed by the Family Court to be criminal in nature and the charge herein for simple kidnapping to be subject to a plea of double jeopardy. The ruling of the district court denying relator’s motion to quash is hereby reversed, and the matter is re *467 manded to the district court for action not inconsistent herewith.
WRIT GRANTED; DISTRICT COURT’S RULING DENYING RELATOR’S MOTION TO QUASH THE BILL OF INFORMATION IS REVERSED; REMANDED.
PARRO, J., concurs.
FITZSIMMONS, J., concurs, and assigns reasons.

. The record indicates that on December 17, 1998, after realtor’s first contempt adjudication, she was required to post a $10,000.00 bond designed to ensure the children’s return after subsequent visitations.