STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 KA 1603

STATE OF LOUISIANA

VERSUS

CHARLES DAVID BURGESS

Judgment Rendered:    SEP 2 2 2020

* * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 60744
Honorable Raymond S. Childress, Judge Presiding

* * * * * *

| | |
|---|---|
| Warren L. Montgomery<br>District Attorney<br>Matthew Caplan<br>Assistant District Attorney<br>Covington, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Michael L. Capdeboscq<br>Covington, Louisiana | Counsel for Defendant/Appellant<br>Charles David Burgess |

* * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY, AND WOLFE, JJ.

**GUIDRY, J.**

The defendant, Charles David Burgess, was charged by bill of information with perjury, a violation of La. R.S. 14:123. He initially pled not guilty. He later filed a motion to quash based on the grounds of double jeopardy. After a hearing, the trial court denied the defendant's motion to quash. The defendant filed a supervisory writ application with this court seeking review of the trial court's ruling on the motion to quash. In an unpublished decision, this court denied the writ application. State v. Burgess, 19-0604, p. 1 (La. App. 1st Cir. 8/5/19), 2019 WL 3571047, at *1.[1] The defendant subsequently withdrew his not guilty plea and entered a Crosby plea of guilty as charged, reserving his right to appeal the trial court's ruling on his motion to quash. See State v. Crosby, 338 So. 2d 584, 591 (La. 1976). The trial court deferred the imposition of sentence pursuant to La. C.Cr.P. art. 893(E)(1)(a), and placed the defendant under thirty days of unsupervised probation.[2] The defendant now appeals, challenging the trial court's denial of his motion to quash. For the following reasons, we affirm the conviction and sentence.

---

[1] As noted, this court previously denied the defendant's writ application raising the same issue now asserted herein on appeal. Although a pretrial determination does not absolutely preclude a different decision on appeal, judicial efficiency demands that this court accord great deference to its pretrial decisions on admissibility unless it is apparent, in light of a subsequent trial record, that the determination was patently erroneous and produced an unjust result. See State v. Humphrey, 412 So. 2d 507, 523 (La. 1981) (on rehearing); State v. Patterson, 08-0416, p. 3 (La. App. 1st Cir. 9/26/08), 995 So. 2d 38, 40. Herein, the matter did not proceed to trial. No new evidence relevant to this issue has been introduced, nor does the defendant raise any new grounds for this court to consider. The record before us does not show that this court's previous ruling was patently erroneous or produced an unjust result. See State v. Strahan, 04-1971, p. 3 (La. App. 1st Cir. 5/6/05), 916 So. 2d 209, 210 n.3. For that reason, we give great deference to this court's prior determination that the defendant's motion to quash should have been denied. Nonetheless, we elect to discuss the merits of the defendant's argument.

[2] The defendant was also sentenced to two years of probation in an unrelated DWI case. In this case, as the trial court deferred sentencing and imposed thirty days of probation, it seems the defendant has satisfied his sentence. To the extent that collateral legal consequences could be imposed on the defendant as a result of his conviction, we find that the instant appeal is not moot. See La. C.Cr.P. art. 893(E)(2); Sibron v. New York, 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917; State ex rel. Bishop v. Blackburn, 384 So. 2d 406, 408 (La. 1980).

## STATEMENT OF FACTS

Due to the Crosby plea, there was no trial or testimony concerning the facts. The bill of information and arrest warrant affidavit allege that on or about March 29, 2018, the defendant intentionally made a false statement under an oath or an equivalent affirmation in an affidavit in support of a petition for protection from abuse. The defendant filed the referenced petition in the Twenty-Second Judicial District Court (22nd JDC) of St. Tammany Parish on behalf of his two minor children, against his ex-wife, Tessa C. Wiggins (formerly Tessa C. Burgess). The petition alleged abuse of the children by Wiggins and indicated that there was no pending divorce, custody suit, or custody order between the parties.[3] In an attached notarized affidavit/verification, the defendant declared the allegations in the petition to be true and correct to the best of his knowledge and acknowledged his awareness that a false statement contained in the petition would constitute perjury.

Based on the defendant's petition, the 22nd JDC issued an order of protection (temporary restraining order) against Wiggins, granting the defendant custody of the two children, effective March 29, 2018 through April 29, 2018. Upon obtaining the order of protection, the defendant removed the children from their school. However, after being notified of an existing custody order of the Twenty-First Judicial District Court (21st JDC) in Tangipahoa Parish,[4] Judge

---

[3] The petition consists of a pre-printed form allowing the petitioner to make applicable selections among the given choices by placing an 'X' or checkmark on the lines next to the entries. Of particular importance are several entries listed in paragraph six of the petition. An 'X' was placed on the line next to an entry that consists of the following statement: "A suit for divorce between the parties is not pending." However, based on the copy of the petition in the record, the 'X' appears to have been crossed out, altered, or edited. A blank line is next to the following entry: "There is a suit for custody pending involving children named in the petition." The other pertinent entry with a blank line next to it states: "There is a custody order in effect involving children named in this petition." Finally, several 'X' marks were placed on the lines next to entries in paragraph eight indicating that the children were being physically abused (slapped, punched, choked, etc.), stalked, and threatened by Wiggins.

[4] Wiggins and the defendant had been involved in custody litigation in the 21st JDC since 2011. On July 11, 2017, the defendant and Wiggins reached an interim compromise in the 21st JDC. Based on the compromise, reduced to writing in an interim stipulation on January 16, 2018, and

3

Amacker of the 22nd JDC immediately vacated the order of protection and ordered the St. Tammany Parish Sheriff's Office (STPSO) to remove the children from the defendant's physical custody and return them to Wiggins. Deputies of the STPSO then went to the defendant's Slidell residence, removed the children from his custody, and returned them to Wiggins.

On April 3, 2018, in opposition to the protective order issued by the 22nd JDC, Wiggins filed an answer wherein she alleged that the defendant's petition was based on misrepresentations, false statements, and purposeful omissions. According to Wiggins' answer to the protective order, this was the defendant's third attempt to circumvent the Tangipahoa Parish Court's jurisdiction. Wiggins' answer further alleged that the defendant committed perjury.

On April 11, 2018, pursuant to the ongoing case in Tangipahoa Parish, Wiggins filed a rule for ex-parte suspension of reunification therapy/visitation and rule for contempt in the 21st JDC. Therein, she set forth that the defendant made false accusations in his 22nd JDC petition for protection, purposefully deceived the court by failing to mention the ongoing custody matter in Tangipahoa Parish, and took the children from school after obtaining the protective order based on false and deceptive information. On July 11, 2018, the 21st JDC granted Wiggins' rule for contempt and later sentenced the defendant to thirty days imprisonment for contempt of court.

On April 17, 2018, Wiggins reported the defendant's actions to the STPSO. Thus, on April 19, 2018, an officer of the STPSO executed an arrest warrant affidavit, alleging that the defendant falsified documents to obtain a protective

---

filed in the 21st JDC on March 19, 2018, Wiggins was awarded sole custody of the children, and a family therapist was appointed to establish routine periods of physical custody for the defendant. In the event the parties were unable to see the therapist within two weeks of the agreement, the stipulation allowed the defendant supervised visitation in the presence of a plain-clothes police officer.

order and took his children from school when there was a court order prohibiting him from doing so. Thereafter, a warrant was issued for the defendant's arrest for the misdemeanor offense of interference with the custody of a child, a violation of La. R.S. 14:45.1, and the instant offense of perjury.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues that the bill of information in this case should have been quashed. The defendant notes that following a hearing on a motion for contempt filed by Wiggins in a separate civil custody case, he was found to be in contempt and sentenced to thirty days in jail, which he has served. Citing State v. Desselle, 00-2408, pp. 6-7 (La. App. 1st Cir. 10/10/01), 809 So. 2d 460, 463-64 and Estate of Graham v. Levy, 93-0636, 93-0134, (La. App. 1st Cir. 4/8/94), 636 So. 2d 287, 290, writ denied, 94-1202 (La. 7/1/94), 639 So. 2d 1167, he argues that the purpose of the sentence was to punish him and that it was therefore a criminal contempt as opposed to a civil contempt. He further argues that the prior offense of contempt included all of the elements of perjury. Citing United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the defendant concludes that the prosecution for perjury in this case is barred by double jeopardy. He argues that he should be spared multiple punishments for the same offense. The defendant suggests that this court should, in conducting a double jeopardy analysis, "compare the elements of the offense actually deemed to have been violated in [the] contempt proceeding against the elements of the substantive criminal offense(s)."

The motion to quash is essentially a mechanism by which to raise pretrial pleas or defenses that do not go to the merits of a charge. In considering a motion to quash, the court must accept as true the facts alleged in the bill of information and determine, as a matter of law and from the face of the pleadings, whether a crime has been charged. State v. Thomas, 12-0470, p. 3 (La. App. 1st Cir.

5

11/14/12), 111 So. 3d 386, 388-89; see State ex rel. Dubarry v. State, 05-0321 (La. 3/10/06), 925 So. 2d 493 (on defendant's request for supervisory review, the Louisiana Supreme Court ordered the trial court to "hold a hearing at which it will determine whether the face of the pleadings shows that relator's convictions violate double jeopardy principles."). When a trial court denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion. State v. Cooper, 18-0175, p. 3 (La. App. 1st Cir. 9/24/18), 260 So. 3d 594, 595. However, a trial court's legal findings are subject to a *de novo* standard of review. See State v. Smith, 99-0606, p. 3 (La. 7/6/00), 766 So. 2d 501, 504.

The federal and state constitutions both provide that no person shall twice be put in jeopardy of life or liberty for the same offense. See U.S. Const. amend. V; La. Const. art. I, § 15. A defendant may raise a claim of double jeopardy before trial by way of a motion to quash, La. C.Cr.P. art. 532(6), as well as after trial by way of a motion in arrest of judgment, if not previously urged. La. C.Cr.P. art. 859(6). The federal and state double jeopardy provisions protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. State v. Carter, 11-2401, p. 2 (La. App. 1st Cir. 4/3/12), 92 So. 3d 416, 417 (per curiam), writ denied, 12-1005 (La. 6/22/12), 91 So. 3d 974.

Louisiana Code of Criminal Procedure article 596, in pertinent part, states double jeopardy exists in a second trial only when the charge in that trial is identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial. When the same act or transaction constitutes a violation of two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S.

6

299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Thus, under this test, the provisions of each statute are analyzed to determine whether each requires proof of a fact which the other does not. State v. Williams, 17-0585, p. 6 (La. App. 1st Cir. 11/16/17), 236 So. 3d 604, 608. After the statutory elements are compared, if each statute requires proof of an additional fact which the other does not, then those statutes do not define the same offense for double jeopardy purposes. See Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.

The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of the specific case before the court or on the actual evidence presented at trial. See Illinois v. Vitale, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed. 2d 228 (1980) ("the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial."). Thus, the question under Blockburger is not whether this violation of a certain criminal statute also constituted a violation of a second criminal statute, but whether all violations of the former constitute violations of the latter. United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994); see also State v. Pike, 18-538, p. 18 (La. App. 5th Cir. 5/8/19), 273 So. 3d 488, 501.

In determining whether the double jeopardy prohibition has been violated, the Louisiana Supreme Court had recognized two different tests, i.e., the test established in Blockburger and the "same evidence" test. State v. Martin, 11-1843, p. 4 (La. App. 1st Cir. 5/2/12), 92 So. 3d 1027, 1030, writ denied, 12-1244 (La. 11/9/12), 100 So. 3d 836. The additional test formerly applied in Louisiana, the broader "same evidence" test, dictated that if the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The formerly applied "same evidence" test

7

depended upon the proof necessary for a conviction, not all the evidence actually presented at trial. Martin, 11-1843 at 4, 92 So. 3d at 1030. However, in 2017, the Louisiana Supreme Court dispensed with the "same evidence" test and indicated that Louisiana courts "are bound only to apply the standard established by the U.S. Supreme Court in Blockburger." State v. Frank, 16-1160, p. 1 (La. 10/18/17), 234 So. 3d 27, 28.

Pursuant to La. R.S. 14:123(A), a conviction of perjury requires proof of the intentional making of a false written or oral statement in or for use in a judicial proceeding. In order to constitute perjury, the false statement must be made under sanction of an oath or an equivalent affirmation and must relate to matter material to the issue or question in controversy. It is a necessary element of the offense that the accused knew the statement to be false, but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false. La. R.S. 14:123(B). Thus, the elements of perjury are: (1) the intentional making of a false statement; (2) that the false statement be made while under oath or affirmation; (3) that the false statement is made for use in a judicial proceeding; and (4) that the false statement is material to the issue or question in controversy. See La. R.S. 14:123(A).

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. Contempts of court are of two kinds, direct and constructive. La. C.C.P. art. 221. A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record. La. C.C.P. art. 222. A constructive contempt of court is any contempt other than a direct one. La. C.C.P. art. 224. Here, the defendant was sentenced for constructive contempt.

8

Pursuant to La. C.C.P. art. 224(2), constructive contempt is the willful disobedience of any lawful judgment, order, mandate, writ, or process of the court. Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. Dauphine v. Carencro High School, 02-2005, p. 15 (La. 4/21/03), 843 So. 2d 1096, 1108. Thus, pertinent to the instant case, the elements of contempt of court are: (1) the existence of a lawful court order; (2) a consciousness of the duty to obey the order; and (3) the intentional disobedience of the order. See La. C.C.P. art. 224(2).

If a contempt proceeding is incidental to a civil action, it is a civil matter if its purpose is to force compliance with a court order or the punishment imposed is remedial or coercive. If the purpose of the contempt proceeding is to punish disobedience of a court order or the punishment imposed is punitive and intended to vindicate the authority of the court, it is a criminal matter. Bourne v. Bourne, 13-2170 (La. App. 1st Cir. 6/18/14), 2014 WL 3702486, at *2 (unpublished), writ denied, 14-1791 (La. 9/12/14), 148 So. 3d 936. Thus, in civil contempt, the punishment is remedial or coercive; in a criminal contempt case, it is punitive and intended to vindicate the authority of the court. A jail sentence is punitive/criminal if it is limited to imprisonment for a definite period; it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order. In other words, a conditional penalty, one which compels the contemnor to comply with the court's order to end the penalty, is a civil one. An unconditional penalty, one that the contemnor cannot affect or end, is criminal in nature. Desselle, 00-2408 at 6-7, 809 So. 2d at 464.

The contempt proceeding at issue herein was specifically based on a rule for ex parte suspension of reunification therapy/visitation and rule of contempt motion filed by Wiggins on April 11, 2018, in the 21st JDC, Division K. The motion, in pertinent part, states that the defendant's "willful and deliberate refusal to abide by

9

the orders of this court constitutes contempt of court, and the Petitioner requests that the defendant be found in contempt, ordered to pay her court costs and attorney fees, and punished accordingly." The 21st JDC judge ruled:

> As it relates to the rule for contempt that was filed on April the 11th, 2018, by Ms. Wiggins, the court is going to grant that rule for contempt.

> \*     \*     \*

> I think it's very clear from the evidence that I've heard over three days that Mr. Burgess is in contempt, particularly as it relates to his actions filing the protective order in St. Tammany Parish that he stipulated to in St. Tammany Parish was going to be dismissed and that he violated the interim stipulated judgment that the parties had entered into on July 11, 2017, by filing that protective order and the harm that he caused to his children as a result of it.

The 21st JDC judge sentenced the defendant to thirty days imprisonment for contempt of court pursuant to La. R.S. 13:4611(d)(i).

While opposing the defendant's motion to quash the bill of information charging the instant perjury offense,[5] the State conceded that the intent of the 21st JDC was to punish the defendant for defiance of its July 11, 2017 order and therefore was a "criminal" contempt rather than a "civil" contempt. This court agrees with the State's assessment. The purpose of the contempt proceeding was to punish the defendant for disobedience of the 21st JDC order and the punishment imposed, jail time, was punitive. The proceeding was clearly penal in nature as the defendant was subject to incarceration with no purge clause.

In denying the motion to quash, the trial court noted that the sanction on the contempt offense took place in Tangipahoa Parish, further stating, "there was enough transpiring over there that the judge was well within their rights to sanction the defendant as they did." As to the instant offense, the trial court added, "But we

---

[5] Prosecution in this case was instituted on September 14, 2018, charging the defendant by bill of information with the instant offense of perjury. On December 18, 2018, the defendant filed his motion to quash the bill of information.

would be well within our rights to pursue here in St. Tammany his perjury because the misinformation given to the judge here was certainly worthy of the perjury charge."

As noted, on appeal the defendant relies on the United States Supreme Court's decision in Dixon. The Dixon Court addressed two consolidated cases in which the defendants, Dixon and Foster, were held in criminal contempt and then criminally prosecuted for the conduct that formed the basis for those defendants being held in criminal contempt. With respect to the criminal contempt rulings against the two defendants in Dixon, the Supreme Court observed that the courts had issued orders directing the defendants not to commit criminal offenses. Dixon, 509 U.S. at 694, 113 S.Ct. at 2855. While on bond for an unrelated offense, one of the defendants therein, Dixon, was arrested and indicted for possession of cocaine with intent to distribute. Based on that arrest, Dixon was convicted of criminal contempt of court for violating his bond conditions forbidding him to commit any criminal offense. The trial court granted Dixon's motion to dismiss the cocaine indictment on double jeopardy grounds. Dixon, 509 U.S. at 692, 113 S.Ct. at 2853. Applying the Blockburger test, the Supreme Court agreed, finding that double jeopardy barred the prosecution of the cocaine offense because that offense did not include any element not contained in the contempt offense for which Dixon was punished. Dixon, 509 U.S. at 700, 113 S.Ct. at 2858.

Regarding the other defendant, Foster, based on his alleged physical attack upon her in the past, Foster's estranged wife obtained a civil protection order requiring Foster not to assault or physically abuse her. Foster kicked his wife and threw her down some stairs, causing physical injury. Foster was subject to multiple counts of criminal contempt, found guilty of four counts of criminal contempt, and sentenced to imprisonment. Subsequently, Foster was indicted on multiple criminal counts based on the same conduct. Dixon, 509 U.S. at 693, 113

11

S.Ct. at 2854. Foster filed a motion to dismiss the indictment, claiming it was barred by double jeopardy. The Supreme Court found that count one of the criminal indictments, assault, was the subject of his prior contempt conviction for violating the provision of the court's order forbidding him to commit simple assault. Thus, applying the Blockburger test, the Supreme Court found Foster's prosecution with respect to count one of the criminal indictments was barred by double jeopardy. Dixon, 509 U.S. at 700, 113 S.Ct. at 2858.

The defendant also cites State v. Hope, 449 So. 2d 633 (La. App. 1st Cir. 1984). The defendant therein was sentenced to, and served, a ten-day jail sentence after being found guilty of contempt of court for violating a visitation order by not returning his child for approximately five months after what was scheduled to be a weekend visit. The defendant subsequently was charged with simple kidnapping based on the same conduct, and filed a motion to quash urging double jeopardy. The trial court granted the defendant's motion, finding the contempt proceeding was criminal in nature and double jeopardy applied. In affirming the trial court's ruling, this court concluded that the two offenses were the same under the "same evidence" test and that trial of defendant on the simple kidnapping charge would have the effect of placing defendant twice in jeopardy for the same course of conduct. This court noted that the proof necessary to convict defendant of the simple kidnapping charge would have been sufficient to convict defendant of the contempt charge. Hope, 449 So. 2d at 636. Hope was decided prior to the Louisiana Supreme Court's decision in Frank, which dispensed with the "same evidence" test relied on by this court to find a double jeopardy violation. See Frank, 16-1160 at 1, 234 So. 3d at 28. Notably, in Hope, this court did not apply the Blockburger test or attempt to analyze the defendant's contempt and criminal proceedings under that test.

12

We find that the instant case is distinguishable from Hope and Dixon. In this case, the two offenses, contempt of court and perjury, are not the same offenses for double jeopardy purposes under the Blockburger test.[6] Applying the Blockburger test, there is no double jeopardy violation in this case since each offense requires proof of an additional fact that the other does not. Specifically, a conviction of contempt of court requires proof that the accused willfully disobeyed a lawful order of the court, and perjury requires no such proof. Further, a conviction of perjury requires proof of the intentional making of a false statement in or for use in a judicial proceeding, and contempt requires no such proof. Accordingly, double jeopardy principles were not violated in this case as the defendant was not punished twice for the same offense.[7] We find no error in the district court's denial of the defendant's motion to quash. The sole assignment of error lacks merit.

**CONVICTION AND SENTENCE AFFIRMED.**

---

[6] We note that in this case, the offenses are not the same offenses for double jeopardy purposes under either the Blockburger test or Louisiana's former "same evidence" test. Regarding the former "same evidence" test, we note that the contempt offense required the State to show that the defendant willfully disobeyed the 21st JDC interim order. On the other hand, absent the defendant's guilty plea thereto, on the instant perjury offense, the State would have been required to prove that the defendant intentionally made a false statement under oath or affirmation in the 22nd JDC proceeding. Thus, the evidence required to support a conviction of one of the offenses would not have supported a conviction of the other.

[7] The prohibition against double jeopardy is not violated when the defendant is prosecuted for different criminal acts committed during one sequential, continuing course of conduct. In those instances, the defendant is not being punished twice for the same act. Rather, he has committed and can be prosecuted for separate crimes attributable to separate and distinct acts that occurred successively. State v. Kirsh, 17-0231, pp. 10-11 (La. App. 1st Cir. 11/1/17), 234 So. 3d 941, 948, writ denied, 17-2169 (La. 11/20/18), 256 So. 3d 993, cert. denied, ___U.S.___, 139 S.Ct. 1207, 203 L.Ed.2d 232 (2019).